838 F.2d 472
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Elmer L. MOSLEY a/k/a Garland Mosley, Defendant-Appellant.
 No. 86-4166.
 United States Court of Appeals, Sixth Circuit.
 Feb. 3, 1988.
 
 Before KEITH and WELFORD, Circuit Judges, and HULL* District Judge.
 PER CURIAM:
 
 
 1
 Appellant Elmer Mosley appeals from a jury verdict finding him guilty of armed bank robbery in violation of 18 U.S.C. Sec. 2113(a)(d). For the reasons set forth below, we AFFIRM appellant's conviction.
 
 I.
 
 2
 On September 3, 1981, appellant was indicted by the Grand Jury for the Northern District of Ohio, Eastern Division, for armed bank robbery in violation of 18 U.S.C. Sec. 2113(a)(d). Appellant's trial by jury took place on October 22, and October 23, 1981, following two significant pre-trial rulings. On October 19, 1981, appellant was granted leave to withdraw a guilty plea entered on October 13, 1981. On the same date, appellant requested and was granted the right to represent himself at trial with his appointed counsel, John Shoemaker, present as advisory counsel.[1] Appellant stated that he believed he could best represent himself at trial, and that he fully understood the implications of asserting his right to conduct his own defense. Appellant further stated that he relieved Mr. Shoemaker of all responsibility for the outcome of the trial. The court informed appellant that he could request Mr. Shoemaker, as advisory counsel, to examine witnesses and give defense arguments, but all responsibility for the conduct of the defense resided in appellant as counsel.
 
 
 3
 Appellant was convicted pursuant to 18 U.S.C. Sec. 2113(a)(d) on October 23, 1981; the court sentenced him to eighteen years imprisonment. On December 29, 1981, appellant's advisory counsel filed a motion with the court to perpetuate and preserve appellant's appellate rights. On January 7, 1982, the court denied appellant's motion on the grounds that it was not timely filed.
 
 
 4
 On December 6, 1985, the court entered an order granting appellant's pro se motion for appointment of counsel for the purpose of filing a direct appeal or for filing a petition for writ of habeas corpus pursuant to 28 U.S.C. Sec. 2255. On October 27, 1986, the court granted appellant's motion for a writ of habeas corpus on the basis that appellant was denied his right to counsel on appeal. The court set aside appellant's sentence and resentenced him to eighteen years imprisonment with credit for time served. On December 19, 1986, appellant filed a notice of appeal in this court.
 
 II.
 
 5
 At trial the government presented several eyewitnesses to the armed robbery. Jeffrey Mills, a bank teller, testified that on August 14, 1981, a light-skinned black requested Mr. Mills to put bait money[2] in a bag. Mr. Mills complied. Appellant chose to forego cross-examining Mr. Mills.
 
 
 6
 Three witnesses, Linda Henderson, Lonnie Wells and Angela Martin, were customers at the bank at the time of the robbery. Linda Henderson testified that a man entered the bank, brandished a gun and demanded money from the tellers. Ms. Henderson positively identified the hat the robber was wearing and the bag filled with bait money. Lonnie Wells testified that she saw the robber exit the bank wearing a black hat and carrying a gun; Ms. Wells positively identified the hat in court. Angela Martin testified that she saw the robber park a car, on the street adjacent to the bank, exit the car and enter the bank. Ms. Martin identified the hat worn by the robber and the car parked on the street. She further testified that she watched the robber leave the bank and walk toward the car, shooting his gun at a man who approached the scene in a green car. After conferring with appellant, advisory counsel cross-examined the above witnesses.
 
 
 7
 William White, an FBI agent who investigated the robbery, testified that he received custody of money seized by the Akron Police Department from an individual who was taken into custody outside the bank. Agent White identified several exhibits, including the bait money and the band used to secure the bait money. He also identified a black hat, red bag, a .38 caliber revolver and a series of photographs taken by the bank surveillance camera.
 
 
 8
 After conferring with appellant, advisory counsel cross-examined Agent White. During cross-examination, Agent White offered the following remark:
 
 
 9
 Question: Let me ask the questions, please, Mr. White. When you arrived at the scene was Mr. Mosley in the custody of the Akron Police Department at that time, or in the custody of the U.S. Government?
 
 
 10
 Answer: When I arrived at the scene he was still in the custody of the Akron Police Department, with the agreement that he would be turned over to the FBI for this and other crimes.
 
 
 11
 Joint Appendix at 56.[3] After completing cross examination, advisory counsel voiced his objection to Agent White's testimony concerning the robber's "other crimes". The court stated that it believed Agent White was simply referring to the crimes committed by the robber against the Akron police. Advisory counsel stated his satisfaction with the progress of the trial and asked appellant if he was satisfied with the progress of the trial; appellant answered in the affirmative.
 
 
 12
 At a side bar conference prior to the presentation of the Government's final witness,[4] appellant, against the advice of counsel, requested to take the stand in his own defense. Thus, following the denial of advisory counsel's motion for a directed verdict, appellant testified in his own defense. Under direct examination by advisory counsel, appellant affirmed that he had been convicted of uttering in 1973, breaking and entering in 1973 and aggrevated burglary in 1976. On cross-examination, appellant admitted that the 1976 conviction was for aggrevated robbery, not aggrevated burglary.
 
 III.
 
 13
 Appellant argues that he was denied the effective assistance of counsel when advisory counsel failed to request a mistrial regarding Agent White's testimony about "other crimes", and when advisory counsel asked him about his prior convictions on the stand. Appellee argues that when appellant chose to represent himself, he effectively waived his right to assert ineffective assistance of counsel. We agree with appellee's position.
 
 
 14
 The sixth amendment guarantees that a defendant in a state criminal trial has an independent constitutional right to self-representation and that he may proceed to defend himself without counsel when he voluntarily and intelligently elects to do so. Faretta v. California, 422 U.S. 806 (1975). In this case, appellant was adamant about representing himself at trial. He requested that his first appointed counsel be withdrawn; appellant accepted the court's second appointment of counsel on October 8, 1981. Within ten days, appellant moved the court to allow him to assert his right to conduct his own defense, with appointed counsel assuming a purely advisory position. The court granted this motion.
 
 
 15
 Appellant took an active part in his defense. Although appointed counsel actively assisted appellant at trial, he did so in an advisory position only. Advisory counsel consistently consulted with and relied upon appellant for all aspects of the case. Thus, the fact that appellant validly asserted his sixth amendment right to self-representation effectively precludes him from raising his claim of ineffective assistance of counsel before this court.
 
 
 16
 Accordingly, appellant's conviction for armed bank robbery is hereby AFFIRMED.
 
 
 
 *
 Honorable Thomas G. Hull, Chief Judge, United States District Court for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 It should be noted that Mr. Shoemaker was the second attorney appointed to represent appellant. On October 8, 1981, appellant requested that his first appointed counsel, Robert Meeker, be withdrawn as counsel. The court released Mr. Meeker, appointed Mr. Shoemaker as counsel, and rescheduled the trial to commence November 2, 1981
 
 
 [2]
 The bait money was identified by a teller's number printed on the strap banding the bills
 
 
 [3]
 It is unclear whether the reference to other crimes concerned additional federal charges outstanding against appellant or past criminal conduct
 
 
 [4]
 The remaining witnesses, David Fuller, William Smith, Richard Hackett and John Duvall, were members of the Akron Police Department